M. J. HARDER and others *v.* J. J. HARDER and others.

A parol agreement, to leave lands to a person by will, though founded on a precedent valuable consideration, cannot be enforced in equity.

A resulting trust may be proved against persons claiming by descent, by parol admissions of the ancestor.

The intestate, in 1802, bought a farm, which was conveyed to him in fee, he giving a mortgage for the purchase money. He resided upon it until his death in 1835 ; but it was paid for out of the labor and earnings of his four younger sons. *Held*, that such payment raised a resulting trust in their favor, and that they were entitled to the farm in equity.

The youngest son, R. being the owner of ten acres of land, the intestate agreed with him by parol that if he would convey the same to his three brothers, he should have a small farm which the intestate owned in another town. R. conveyed the ten acres accordingly, went into possession of the small farm, and made permanent improvements upon it : *Held*, that the agreement was so far performed as to bind the intestate and his heirs.

Where the complainants have a legal title to a part of the lands as to which they ask relief against an ejectment, their bill as to such part, will be dismissed.

An objection to the bill for the misjoinder of complainants, will not be regarded, when it is raised for the first time at the final hearing of the cause.

Albany, January, 1844.

THE bill in this cause was filed to have the titles of the respective complainants in lands near the city of Hudson, declared and established ; and to restrain certain actions of ejectment brought by the defendants for their recovery. The facts are fully stated in the opinion of the court.

*J. Gaul, Jr.*, for the complainants.

*K. Miller*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—The leading facts in this case, as established by the testimony, are these. In 1802, John M. Harder, the father of the complainants, of John J. Harder

and his two sisters who are defendants, was in the possession of a farm near Hudson, called the Roseboom farm, claiming it as owner.   He was also the owner, by inheritance, of forty acres in Claverack.   In that year, he bought another farm near the Roseboom property, called the Irish farm, and received a conveyance of it in fee subject to a mortgage.   Within a few years after, John M. conveyed small parcels of this farm to the complainants Michael, Robert and Peter, and to John J., respectively.

In May, 1809, one Duncan recovered the Roseboom farm, except a small portion containing about ten acres, in a contested ejectment suit against John M.   The case is reported in 4 Johns. R. 202.

The complainants Michael, Robert and Peter, in March, 1811, purchased from Duncan the farm so recovered, and took a conveyance of it to Peter.   Peter subsequently conveyed an undivided third part to Robert, and another to Michael.   In 1820, John M., the father, conveyed to the complainant Richard, who was his youngest son, the portion of the Roseboom farm not recovered by Duncan.

The legal title to the residue of the Irish farm remained in John M. Harder till his death in 1835.

To return to the year 1802.   John M., the father, was then over sixty years of age.   Michael was his eldest son, and was a married man.   Robert was then about twenty-seven years old, and Peter was of full age.   These three, who were called "*the boys*" till they were sixty or seventy years old, continued to reside with their father on these farms, though some of the time in different houses, until his death.   The other complainant, Richard, was a boy in 1802.   He also lived with his father, until shortly be-. fore the latter died.   The defendant, John J., was brought up a blacksmith.   He says in his answer, that he commenced business in 1804.   "*The boys*" assisted him in erecting his buildings on the portion of the Irish farm conveyed to him.

Besides the five sons, John M. Harder had five daughters, who were brought up in his family, and married off with such portions as he deemed reasonable.   He never worked any himself after his sons became old enough to labor.   Witnesses who had known him from the time of the purchase of the Irish farm, say that he

never worked a day. The Roseboom farm was never cultivated much until after it was bought anew from Duncan. "*The boys*" worked the farms and fished in the Hudson river. They earned a great part of their money by fishing.

John M. told one witness that when he bought the Irish farm, he had not five dollars in the world. Having no title to the Roseboom farm, this was literally true, if he owed the value of the small farm in Claverack. And there is no room to doubt that at the close of the Duncan law suit, he was not worth any thing. Witnesses who had good opportunities for knowing, testify that the Irish farm was paid for by "*the boys ;*" amongst others their sister, Mrs. Son, who was the eldest of the family. The father himself declared this, time and again, during his life. His two daughters, who are defendants, have made the same assertion, and disclaimed an interest in the property. (Their statements are not inadmissible, because they are married. If they had answered, making the same admissions, the court would have made a decree upon their admissions.)

The family appeared to have lived in common, until after they were successively portioned off and established in life. The four complainants continued in common, until three of them became old men.

As to John J. Harder, he did the blacksmith work for the farms and the family for many years. On the other hand, he helped himself to grain and provisions from the farm, and was aided in various modes by the labor of "*the boys*" and their teams. Probably no charge was intended on either side. His father declared repeatedly, that John J. had received his part of the property ; and he also stated that John J. had not helped to pay for the property. The proceeds of the Claverack farm went into the common stock. It does not appear that they were of much account. They were probably much less than went to the support and fitting out of the members of the family other than the complainants.

My conclusion upon the testimony is clear, that the Irish farm was paid for by the labor and resources of the three eldest complainants. That Richard aided in some degree ; and that he bore his full share with the others, in the payment of the Roseboom farm ;

so that as between the complainants themselves, he is entitled to participate in whatever rights they may have in the aggregate property in controversy.

To resume the history of the case.   When John M. Harder had become ninety years old, the complainants began to feel uneasy about the title to the residue of the Irish farm remaining in him, and requested him to convey to them.   It seems that he determined not to part with the control of it while he lived.   But in 1831, he procured a surveyor to mark out and divide the farm (about 82 acres) between Michael, Robert and Peter, equally, which was done accordingly, and stakes put down showing their respective bounds.   This division included the share of Peter and the small parcel already conveyed to Robert.   He also directed a will to be prepared, and executed it, devising the title accordingly; and at the same time giving the Claverack farm to Richard.   He subsequently had a similar will drawn and executed, giving the latter to trustees for Richard and his family, in case he became incapable of managing it.   In 1831, he declared that Richard was to convey his piece on the Roseboom farm to the other *boys*, and then was to have the Claverack farm.   He afterwards said that Richard's wife's property was laid out on that farm, and by other proof it appears to have been laid out in building a barn and repairing the house.   On the 19th May, 1832, Richard conveyed that part of the Roseboom farm to the other three complainants.

After John M. Harder's death, a great part of the family came together to have the will read, and it could not be found.   Those present assented to take the statement of Mr. Rowley, who drew the will, and abide by his declaration of its contents.   An instrument under seal to that effect, was drawn up and was signed at various times by all of the heirs except John J. Harder.   Mr. Race, a defendant, signed it on condition that all should execute.   Vosburgh and wife, also defendants, signed unconditionally, but on his getting possession of the paper two days after, he struck out the names of himself and his wife.   Neither of the *feme coverts* who are now defendants, acknowledged its execution before any officer.

Mr. Rowley made a written statement of the contents of the

will, conformably to the sealed agreement; and showing the devises before mentioned.

In 1840, the defendants commenced actions of ejectment to recover the Roseboom, Claverack and Irish farms.

' Before proceeding to the main questions, I will dispose of the minor points which were raised by the defendants.

1. As to the misjoinder of complainants ; Richard Harder claiming the Claverack farm in severalty, and setting up no interest in the other property.

This objection, if it were well founded, is not available, because it is not insisted on in the answer.

2. The answer claims the same benefit as from a demurrer, to that part of the bill setting up the complainant's title to the Roseboom farm, on the ground that there was a sufficient remedy at law.   This objection is well taken.   Three of the complainants have the legal title to the whole of that farm, and have no need of the aid of this court in their defence to the ejectments for that portion of the estate in controversy.

In regard to the principal question, the right to the Irish farm.

Although the justice of the complainant's claim was clearly manifest at the hearing, I felt great difficulty in the principle on which they could be relieved.   The bill founds no claim upon the will, as one existing at the death of John M. Harder.   It rather proceeds upon the verbal contract to leave the lands to these parties by his will, as proved by Mr. Rowley, founded upon the consideration of their having paid for the property and their continuing to support him; and partly executed, by the division marked out by Rowley, taking possession in severalty according to it, and by Richard's conveyance of his parcel of the Roseboom farm.

There are great, if not insuperable obstacles, to sustaining this agreement.   It is loose and indefinite in its terms; it is by parol, affecting the title to lands ; and the part execution set up on the behalf of the three eldest complainants, was wholly between themselves and Richard Harder.

There is another ground on which the case may be placed in reference to the Irish farm.   As I have already stated, the evidence is conclusive that the three eldest complainants paid for

that farm. It is not probable that the decedent contributed in any manner to that payment. He received the legal title, but he held it as a *resulting trust* in favor of his sons who paid the consideration. 1 Cruise's Dig. 471, tit. Trust, ch. 1, § 31. *Boyd v. McLean,* 1 J. C. R. 582.

It is very true that the declarations of the father in his lifetime, are not the kind of evidence by which the title to real estate is to be divested or destroyed. But for any purpose for which parol evidence is competent, his declarations are admissible against the defendants and others claiming under him by descent. A resulting trust may be proved by parol. The statute of frauds expressly excepted trusts arising or resulting by implication of law. I shall therefore hold that the three eldest complainants were equitably seised in fee of the Irish farm, with a claim upon them in favor of Richard, growing out of his contributions to the common stock, which went principally into the payments for the Duncan purchase.

Then it remains to speak of the small farm at Claverack. The allegation in the bill, on this subject, is substantially proved. One witness says that when the decedent was speaking of his plan of dividing the Irish farm among "*the boys,*" he said that Richard was to give up the deed of the ten acres by the river to "*the boys,*" or give them a new deed of it, and then he was to have the land in Claverack.

Another witness testifies that the decedent said he wanted Richard to give up that deed to the rest of the boys, and then he should have the old place in Claverack.

It is fairly established that the decedent in consideration of Richard's conveying the ten acres to the other three complainants, agreed with him to give or grant to him the Claverack land. It is probable that Richard's contributions to the payment for the Roseboom farm, and to the general support of the family, were inducements with his father for this arrangement. But that does not impair the force of the allegation in the bill. It is not shown that the agreement was inadequate, provided it rests only on the conveyance of the ten acres.

Richard conveyed the ten acres to the other complainants, went into possession of the forty acres in Claverack, laid out his wife's

property in permanent improvements there, and has remained in possession until this suit was brought. The agreement is so far performed as to take it out of the statute of frauds. The decedent became a trustee of the legal estate, and Richard was equitably seised.

On these grounds, I think he is entitled to be quieted in his title to the forty acres, against the claims of the defendants.

It is unnecessary for me to determine the points raised upon the agreement signed by all the defendants except John J. Harder.

The defendants will be perpetually enjoined from prosecuting the ejectment suits against the Irish farm and the Claverack property ; and will be decreed to release the same to the respective complainants.

The bill is not sustained as to the Roseboom premises, on the ground already stated. For this cause, without referring to other considerations, the complainants must bear their own costs of suit.